```
                                  UNITED STATES DISTRICT COURT
                                  SOUTHERN DISTRICT OF FLORIDA

                                  CASE NO. 09-60704-CIV-MARTINEZ
                                  MAGISTRATE JUDGE P.A. WHITE
LONNIE MADISON,                 :

      Plaintiff,                :

v.                              :     REPORT OF
                                      MAGISTRATE JUDGE
CITY OF CORAL SPRINGS, et al., :

      Defendants.               :
_____
```

## I    INTRODUCTION

Plaintiff Lonnie Madison, a state prisoner now confined at Hendry C.I. Work Camp ("HCIWC"), filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 for damages and other relief (Complaint DE#1, dated May 7, 2009, and mailed to the Court from Calhoun CI on), based on allegations that his constitutional rights were violated by police officers in Coral Springs, Florida, on July 1, 2005. In that complaint, Madison designated as defendants only the City of Coral Springs, the Coral Springs Police Department, Officer Kalpus, and Officer Floyd. No officers Doe or other individuals were designated as defendants.

In a Preliminary Report (DE#8) the plaintiff's allegations were summarized, as follows:

> The plaintiff alleged that Officers Kalpus and Floyd (and others not named as defendants, described as a "task force") falsely arrested him and engaged in an illegal warrantless search and seizure on July 1, 2005. He stated that he was never charged with a crime due to the illegal seizure of property.

(DE#8, at p.4). Service for Kalpus and Floyd was ordered. The City of Coral Springs, and its Police Department were dismissed from the case (Report DE#8; Order DE#49).

The first defendant officer, initially identified by the plaintiff as being Officer Kalpus, subsequently was correctly designated by him as being Officer Capplis, and his name was

corrected in the record. It first appeared that the plaintiff had been attempting to amend to add an entirely new individual named Capplis, but it became apparent that Kalpus [sic] named in the initial complaint, and Capplis, were one in the same. His name had simply been misspelled in the initial pleading. (<u>See</u> Reports DE#s 8, 18; and Order DE#49).

After plaintiff Madison submitted an Amendment (DE#29, filed on October 29, 2009) to add two entirely new defendants (Officers Gallagher and Koslowski) whom he had neither identified by name, nor designated as unidentified "John Doe" defendants in the initial complaint, an Order for the Marshal to serve process upon them was entered (DE#s 33, 34, and 35).

**This Cause is before the Court upon three motions for summary judgment: 1) a joint motion to dismiss by Gallagher and Kozlowski (DE#37)**, with supporting exhibits (DE#s 37-1 and 40), **which was converted to a motion for summary; 2) a motion for summary judgment by Floyd (DE#43)** with a supporting Statement of Facts (DE#45) and Exhibits (at DE#s 46-1 and 47-1 to 47-5); **and 3) a motion for summary judgment by Capplis (DE#44)**, which relies on the same statement of facts and exhibits as Floyd (DE#s 45, 46-1 and 47-1 to 47-5). In connection with each of the three summary judgment motions, an Order of Instructions was entered, informing the plaintiff of his right to respond (<u>see</u> Orders, DE#s 42 and 48).[1] From HCIWC, on January 27, 2010, the Plaintiff Madison filed

---

[1]   Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interroga-
> tories, and admissions on file, together with the
> affidavits, if any, show that there is no genuine issue
> as to any material fact, and that the moving party is
> entitled to judgment as a matter of law.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to
> establish the existence of an element essential to that
> party's case, and on which that party will bear the
> burden of proof at trial.  In such a situation, there

two Responses (DE# 52, opposing Floyd's and Capplis' motions; and DE#53, opposing the joint motion by Gallagher and Capplis) each consisting of a one sentence argument: "The plaintiff is intitle [sic] to Rule of Fed.R.Civ.P. 56(F)(2) and Fed.R.Civ.P. 56(a)." All four defendants [Gallagher, Kozlowski, Capplis, and Floyd] filed joint Reply, noting that the sole content of Plaintiff's responses to their motions for summary judgment was to invoke the provisions

---

can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  (citations omitted)

Thus, in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379, 1382 (11 Cir.1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11 Cir.), <u>cert. denied</u>, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080 11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial <u>Fed.R.Civ.P.</u> 56(e); <u>Coleman v. Smith</u>, 828 F.2d 714, 717 (11 Cir.1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Baldwin County, Alabama v. Purcell Corp.</u>, 971 F.2d 1558 (11 Cir.1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, <u>supra</u>).

Pursuant to <u>Brown v. Shinbaum</u>, 828 F.2d 707 (11 Cir. 1987), the Orders of Instruction (DE#s 42 and 48) were entered to inform the plaintiff Madison of his right as a *pro se* litigant to oppose the defendants' motions for summary judgment (DE#s 37, 43, and 44). The Orders provided Madison with explicit instructions regarding the requirements under Rule 56 for proper responses to such motions.

of Rule 56, and there was therefore no need for a substantive Reply.

## II   DISCUSSION

### A.   Gallagher and Koslowski

Review of the record, including the complaint (DE#1), and the amendment (DE#29) naming Gallagher and Koslowski for the first time, as well as the Defendants' Motion (DE#37) and their exhibits (at DE#s 37-1 and 40), leads to the conclusion, based on un-refuted evidence, that the suit against them is time barred, as they have argued in their motion.

Florida's 4 year statute of limitations applies to this case,[2] and review of the record reveals that it had expired before Gallagher and Koslowski were designated as defendants in the suit. The initial complaint (DE#1, naming Floyd and Kalpus [Capplis], dated May 7, 2009) was timely, but it designated only the City, its Police Department, and Floyd and Capplis [mistakenly identified as Kalpus] as defendants. The Amended Complaint, which named Officers Gallagher and Koslowski (DE#29) for the first time was not filed with the Court until late October 2009, nearly 4 years and three

---

[2]   In Wilson v. Garcia, 471 U.S. 261 (1985), the Supreme Court held that the length of the limitations period in actions pursuant to 42 U.S.C. §1983, and the closely related questions of tolling and applications, are to be governed by state law. The Court further held that these cases are best characterized as personal injury actions. Such claims in Florida are governed by Fla.Stat. §95.11(3)(a), actions founded on negligence, or Fla.Stat. §95.11(3)(o), actions for assault, battery, false arrest, malicious prosecution, malicious interference, false imprisonment, or other intentional tort, except as provided in other sections. Both of these sections establish four year periods of limitations.

Later, the Supreme Court decided Owens v. Okure, 488 U.S. 235 (1989), which held that when a State has multiple statutes of limitations for personal injury actions as does Florida, courts considering §1983 claims should borrow the State's general or residual personal injury statute of limitations. In Florida, this is Fla.Stat. §95.11(3)(p), four years for actions not specifically provided for. The Supreme Court has also held that a federal court applying a state statute of limitations to an inmate's federal civil rights action should also apply any state statute tolling the limitations period for prisoners. Hardin v. Straub, 490 U.S. 536 (1989). Florida has a general tolling statute, Fla.Stat. §95.051, but it does not toll limitations periods for prisoners.

Thus, for purposes of the claims raised in this civil rights suit, the length of the limitations period, determined by state law, is four years.

months after the events which are the subject of the complaint allegedly occurred.[3]

Because a §1983 action brought in Florida is governed by Florida's four-year personal injury statute of limitations, see Wilson v. Garcia, supra, 471 U.S. at 276; Chappell v. Rich, 340 F.3d 1279, 1283 (11 Cir. 2003), cert. denied, 540 U.S. 1219 (2004); Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11 Cir. 1999) (citing Owens v. Okure, supra), because the amended complaint naming Gallagher and Koslowski (DE#29) was brought more than 4 years after the July 1, 2005 events giving rise to the claims against them, and because the amended complaint against Gallagher and Koslowski (DE#29) does not relate back to the filing of the original complaint (DE#1) which was timely, the claims against Gallagher and Koslowski are untimely, and barred from review.[4]

---

[3] Although a Task Force from the Coral Springs Police Department was mentioned in the initial complaint (DE#1), the plaintiff in that pleading made no attempt whatsoever to designate as a defendant any member of the task force by name other than Floyd and "Kalpus." Even if the plaintiff had attempted to bring Gallagher and Koslowski into the suit, on May 7, 2009, by naming them as "unknown" task force members, or as defendants "John Doe," he would still have had to designate them by name before the 4 year limitations had run on July 1, 2009. (In the case of Wayne v. Jarvis, 197 F.3d 1098 (11 Cir. 1999), a *pro se* case in which the inmate/plaintiff did not identify John Doe deputy sheriffs by name until three months after expiration of the period of limitations, the Eleventh Circuit held that the *pro se* inmate's lack of knowledge regarding identities of the deputy sheriffs was not a mistake concerning the identity of the proper parties, and thus, his amendment to the Section 1983 complaint arising from a beating by fellow inmates, to replace the "John Doe" deputy sheriffs with specifically-named defendants, did not relate back to the original complaint, so as to avoid a bar based on the statute of limitations.)

[4] For the untimely amended complaint naming Gallagher and Koslowski not to be time barred, the claim against them would have to relate back to the initial timely Complaint. In this case it does not.

In order for an amendment adding a new party to relate back, the plaintiff must satisfy three requirements: 1) the claim against the newly named party must have arisen out of the same conduct or transaction set forth in the original timely pleading; 2) the newly named party must receive notice of the action within the 120 day service period so it will not be prejudiced in maintaining a defense on the merits; and 3) the newly named party must have known, or should have known, that "but for a mistake" made by the plaintiff concerning the newly named party's identity, the action would have been brought against the newly named party in the first place. Fed. R. Civ. P. 15(c)(3). The federal rules permit amendments with relation back in order to correct a misnomer of a defendant where the proper defendant is already before the court and the

5

## B.   Floyd and Capplis

Based on the arguments made by Floyd and Capplis, and the un-refuted evidence submitted by them (at DE# 46-1, and DE#s 47-1 to 47-5) in support of their respective motions (DE#s 43 and 44) it is apparent that they are entitled to qualified immunity, and summary disposition of the complaint against them.

The record, including Gallagher's probable cause affidavit (at DE#s 46-1 and 47-2), Affidavits by Capplis and Floyd (DE#s 47-1 and 47-3, respectively), a written authorization by Sharney Giles signed on 7/1/05 at 1600 hours, giving officers permission to search her home, the premises at 4123 Woodside Drive #2, in Coral Springs, Florida, where the search in question took place (DE#47-4), and statements/admissions made by the plaintiff Madison at his own deposition (DE#47-5), reveals the following.  On May 30, 2005, two women were arrested for possession of crack cocaine, after leaving the residence of Sharney Giles, at 4123 Woodside Drive #2, in Coral Springs, Florida. As part of an ensuing investigation, Capplis, along with Gallagher and Koslowski went to the residence on July 1, 2005. There, the officers encountered Hester Davis, who was inside the residence. Davis was asked who was the legal occupant of the apartment, and she responded that it was her daughter, Sharney Giles.  Davis informed officers that Ms. Giles and her boyfriend Lonnie Madison both lived there, and that her daughter received Section 8 housing assistance for the apartment. Gallagher ran a background check on Lonnie Madison to determine if his presence in the Section 8 housing unit was permitted.

---

effect is merely to correct the name under which he is sued.  However, a new defendant cannot normally be substituted or added by amendment after the statute of limitations has run.  <u>Wayne v. Jarvis</u>, 197 F.3d 1098, 1103-04 (11 Cir. 1999). "The drafters of Rule 15(c)[ ] included the mistake proviso... in order to resolve 'the problem of a misnamed defendant' and allow a party 'to correct a formal defect such as a misnomer or misidentification.' <u>Fed R. Civ. P.</u> 15(c)(3), Advisory Committee Notes to 1991 Amendment." <u>Wayne</u>, 197 F.3d at 1103.

In the instant case, there is no indication that the plaintiff made any mistake as to the identity of Gallagher and Kozlowski. He simply did not name them as defendants in the original, timely complaint.

[According to the defendants' affidavits, convicted felons are not permitted to stay in Section 8 housing]. The background check revealed that Madison had previous felony arrests and convictions for offenses including robbery and narcotics violations. When Ms. Hester was informed of the results of the background check, she made a phone call and summoned Giles and Madison to the residence. Upon their arrival, Gallagher spoke to Madison outside of the apartment. Giles was separately informed that accusations had been made that drugs were being sold out of the apartment, and she was confronted with the fact that Madison, based on his past criminal record, was not allowed to reside there. Giles denied selling drugs, and, without coercion, verbally gave consent for officers to search the apartment, and offered to sign a search consent form (which appears in the record). K-9 officer Floyd was summoned, his dog, trained to sniff out narcotics, alerted on a lock box/safe that was located in the bedroom, thereby indicating to the officers the likelihood that drugs were present inside. Floyd's only involvement was conducting the search with his K-9 companion. Gallagher took possession of the lock box. Subsequently, it was opened, after Giles provided the combination, and illegal narcotics, a scale, and a firearm were found inside. Madison was arrested by Gallagher for possession of a firearm by a convicted felon, possession of marijuana, and possession of drug paraphernalia. When the items were discovered, Gallagher then approached Madison, and advised him of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Madison agreed to talk to Gallagher, and told him that he had gotten the lock box from his uncle, that he had handled the things inside the box, and had removed the handgun from a sock that it was kept in. Madison was told he was being placed under arrest, and was taken to jail. (In the deposition transcript, which the defendants have submitted as one of their exhibits, Madison admitted that the rented apartment where the safe and contraband items were found was his girlfriend's residence. He admitted staying there with her, but disavowed knowing that as convicted felon and he was not permitted to sleep at the Section 8 apartment. At deposition he also admitted that the gun and ammunition, and a scale which were found inside the safe

belonged to him, but he denied that the drugs were his).  Madison also stated, at deposition, that he was not convicted of any charges, explaining that the four officers were unable to attend his suppression hearing because they were needed at a death investigation at the time that the suppression hearing was held.

In this case, it is clear that the plaintiff cannot prevail on a claim of unlawful search and seizure, or claims of false arrest and imprisonment.  First, based on evidence proffered by the defendants, which plaintiff Madison has not refuted, the officers obtained voluntary consent, both verbal and written, from Ms. Giles, whose apartment was the subject of investigation, to enter and search the premises. Only then, after a K-9 trained to sniff for drugs alerted on the lock box, were the drugs, drug paraphernalia, and a firearm found inside. Under the circumstances, there clearly was no Fourth Amendment violation for unlawful entry and search and seizure of the property, and the officers clearly had reason to believe that there was probable cause, or at least arguable probable cause, to conduct the warrantless arrest of Lonnie Madison on July 1, 2005.

Here, the defendants have invoked the affirmative defense of qualified immunity, which protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Priester v. City of Riviera Beach, 208 F.3d 919, 925 (11 Cir.2000).[5]  When faced with a question of qualified

---

[5]    A constitutional right is clearly established if the state law at the time of the incident gave officials fair warning their behavior was unlawful. Hope v. Pelzer, 536 U.S. 730, 741 (2002). Law is "clearly established" for official immunity purposes by decisions of the United States Supreme Court, Eleventh Circuit Court of Appeals or the highest state court. Wilson v. Strong, 156 F.3d 1131, 1135 (11 Cir. 1998). To show an official is not entitled to immunity, the plaintiff must point to earlier case law that is "materially similar...and therefore provided clear notice of violation," or to "general rules of law from a federal constitutional or statutory provision or earlier case law that applied with obvious clarity to the circumstances" and clearly established the conduct was unlawful. Trammell v. Thomason, 2009 WL 1706591 at *5 (11 Cir. 2009) (quoting Long v. Slaton, 508 F.3d 576, 584 (11 Cir. 2007)).

immunity, the Courts pursuant to Saucier v. Katz, 533 U.S. 194, 199-200 (2001), receded from in part by Pearson v. Callahan, 129 S.Ct. 808 (2009), have until recently engaged in rigid a two-step analysis: first asking [taking the facts in the light most favorable to the plaintiff/non-movant] whether the official's alleged conduct violated the plaintiff's constitutional rights, and then proceeding, if necessary, to a second question, whether the right was clearly established at the time of the conduct.[6] If the court, addressing the questions in the sequence set out in Saucier, first determines that no constitutional violation occurred, the inquiry ends there. If, however, the alleged conduct amounts to a constitutional violation, the Court then asks whether the right was clearly established at the time of the conduct.

Here, based on the evidence, even when it is taken in the light most favorable to the plaintiff (the non-movant), it is clear that there was no violation of his constitutional rights. Based on the defendants' showing of material facts, which are undisputed, it is apparent that the officers had consent to search, and probable cause to arrest the plaintiff Madison.[7] It therefore is clear that

---

[6] Following the Supreme Court's opinion in Pearson v. Callahan, 129 S.Ct. 808 (2009), the Saucier two-step analysis is no longer an inflexible progression. Post-Pearson, courts are now free to answer the second step first.

[7] Although a warrantless arrest without probable cause violates a person's constitutionally protected liberty interest, and forms the basis for a section 1983 claim, Marx v. Gumbinner, 950 F.2d 1503, 1505-06 (11 Cir.1990); Motes v. Meyers, 810 F.2d 1055 (11 Cir. 1987), the Constitution does not guarantee that only the guilty will be arrested, Baker v. McCollan, 443 U.S. 137 (1979), and the existence of probable cause is an absolute bar to a section 1983 action for false arrest, Marx v. Gumbinner, supra, 950 F.2d at 1506, and cases cited therein. Moreover, the fact that an arrested individual is ultimately acquitted, or charges against him are dropped, is of no consequence in determining the validity of the arrest. Marx, supra, 950 F.2d at 1507; Mills v. Town of Davie, 48 F.Supp.2d 1378, 1380 (S.D.Fla. 1999). Probable Cause "requires more than mere suspicion, but does not require convincing proof." Bailey v. Board of County Commiss'rs of Alachua County, 956 F.2d 1112, 1120 (11 Cir. 1992). See also Rankin v. Evans, 133 F.3d 1425, 1435 (11 Cir. 1998) (quoting State v. Scott, 641 So.2d 517, 519 (Fla. 3 Dist. 1994) ("The facts necessary to establish probable cause need not reach the standard of conclusiveness and probability as to the facts necessary to support a conviction")).

The definition of probable cause is well established, see, e.g., United States v. Elsoffer 671 F.2d 775 (11 Cir. 1982), and it has been long recognized that probable cause to arrest exists where the facts and circumstances within an

the defendant officers Floyd and Capplis are entitled to qualified immunity, and their motions for summary judgment DE#s 44 should be granted. [It is further noted that, under the circumstances, even if the claims against Gallagher and Kozlowski were not time barred, as discussed <u>supra</u> in Section II.A. of this Report, they too would be entitled to judgment in their favor based on lack of a constitutional violation, and entitlement to qualified immunity, because there was consent for the search, and they too had reason to believe that Madison had committed a criminal offense and that there was probable cause, or at least arguable probable cause for arrest].

### III    <u>CONCLUSION</u>

It is therefore recommended that: 1) the motion to dismiss (DE#37) filed jointly by Gallagher and Kozlowski, construed as a

---

arresting officer's knowledge, and of which he had reasonably trustworthy information, are sufficient for a man of reasonable caution to believe that an offense has been or is being committed. <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991); <u>Draper v. United States</u>, 358 U.S. 307, 311 (1959); <u>United States v. Herzburn</u>, 723 F.2d 773, 775 (11 Cir. 1984); <u>United States v. Kye Soo Lee</u>, 962 F.2d 430, 435 (5 Cir.1992). Validity of an arrest is not vitiated, and an arresting officer is not stripped of entitlement to qualified immunity on a claim of false arrest so long as there was probable cause to arrest for some offense. <u>See</u> <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195-96 (11 Cir. 2002)(validity of an arrest does not turn on whether the offense for which there was probable cause was announced to the individual at the time of his/her arrest, nor does it turn on whether the offense was cited in the officer's arrest report); <u>Stachel v. City of Cape Canaveral</u>, 51 F.Supp.2d 1326, 1331 (M.D.Fla. 1999)("The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead we focus on the validity of the arrest. If there is probable cause for any of the charges made ...then the arrest was supported by probable cause, and the claim for false arrest fails") (quoting <u>Wells v. Bonner</u>, 45 F.3d 90, 95 (5 Cir. 1995)).

Moreover, the existence of circumstances in which an arresting officer has only *arguable* probable cause, if not actual probable cause, is sufficient for a defendant officer to be entitled to qualified immunity. <u>See</u> <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195 (11 Cir.2002); <u>Scarborough v. Myles</u>, 245 F.3d 1299, 1302 (11 Cir.2001). Arguable probable cause exists where reasonable officers in the same circumstances, and possessing the same knowledge as the defendant officer(s) could have believed that probable cause existed to arrest. <u>Scarborough</u>, <u>supra</u>, 245 F.3d at 1302. In making the determination whether arguable probable cause exists, the Court must apply an objective standard, asking whether the officer's actions are reasonable, regardless of the officer's underlying intent or motivation. <u>Vaughn v. Cox</u>, 264 F.3d 1027, 1036 (11 Cir. 2001); <u>Montoute v. Carr</u>, 114 F.3d 181, 184 (11 Cir. 1997). Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, because to do so would negate the concept of probable cause and transform officers into prosecutors. <u>Scarborough</u>,at 1302-03.

motion for summary judgment, be GRANTED; 2) The defendant Floyd's motion for summary judgment (DE#43) be GRANTED; 3) the defendant Capplis' motion for summary judgment (DE#44) be GRANTED; and 4) this case be Closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: March 29th, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Lonnie Madison, Pro Se
      DC No. 771656
      Hendry Correctional Institution
      12551 Wainwright Drive
      Immokalee, FL 34142-4797


      E. Bruce Johnson, Esquire
      Johnson, Anselmo, Murdoch, Burke,
           Piper & Hochman, P.A.
      2455 E. Sunrise Blvd., Suite 1000
      Fort Lauderdale, FL 33304